



**FILED**

Dec 31 2025, 8:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Keystone Cooperative, Inc.,

*Appellant-Plaintiff*

v.

Brock Frasch and Evolve Ag, LLC,

*Appellees-Defendants*

December 31, 2025

Court of Appeals Case No.
25A-CE-1212

Appeal from the Marion Superior Court

The Honorable Christina R. Klineman, Judge

Trial Court Cause No.
49D01-2503-CE-15315

**Opinion by Judge Tavitas**
Judges Bailey and Kenworthy concur.

**Tavitas, Judge.**

## Case Summary

[1] Keystone Cooperative, Inc. ("Keystone") filed an action against Brock Frasch and Evolve Ag, LLC ("Evolve") (collectively, "Defendants") in Marion County. Defendants subsequently filed a motion to transfer venue to Fountain County, where Frasch resides and which is the principal place of business of Evolve. The trial court granted the motion to transfer venue. Keystone appeals and claims that Marion County is a preferred venue and that, pursuant to Trial Rule 75, venue cannot be transferred from a county of preferred venue even if another county is also a preferred venue. We conclude that Marion County is not a preferred venue and, accordingly, affirm.

## Issue

[2] Keystone presents one issue, which we restate as whether the trial court erred by granting Defendants' motion to transfer venue from Marion County to Fountain County.

## Facts

[3] Keystone is a farmer-owned cooperative headquartered in Marion County, Indiana, which is also its principal place of business. Keystone provides agricultural products and services to customers across Indiana, Michigan, Illinois, and Ohio.

[4]    Frasch worked for Keystone for over twenty years, most recently as assistant vice president of agronomy. In this role, Frasch oversaw Keystone's customer accounts, solicited new business, and participated in strategic planning for the agronomy division. Frasch also had access to Keystone's confidential information, including customer lists, pricing, sales data, business plans, financials, and employee information. As a condition of employment, on April 22, 2024, Frasch signed an acknowledgment that he had read and understood Keystone's employee handbook, which prohibited employees from using confidential information for the benefit of any entity other than Keystone and from copying such information to non-company devices.

[5]    On December 9, 2024, Frasch resigned from Keystone and immediately began operating Evolve, a competing agricultural services company. Frasch is a resident of Fountain County, Indiana, and Evolve's principal place of business is Fountain County.

[6]    On March 31, 2025, Keystone filed a complaint against Defendants in Marion County. In its complaint, Keystone alleged breach of fiduciary duty, unfair competition, civil conversion, and tortious interference with business relationships. Keystone further alleged that Frasch misappropriated confidential information and damaged Keystone's enterprise goodwill. The complaint sought both equitable relief and compensatory damages.

[7]    On April 10, 2025, Defendants filed a motion to change venue in which they sought transfer of venue to Fountain County under Trial Rule 75(A)(1) and

(A)(4). After a hearing on May 13, 2025, the trial court granted Defendants'
motion and ordered the case transferred to Fountain County. The trial court's
order stated that "preferred venue for this cause of action lies in Fountain
County, Indiana, where Defendant Brock Frasch resides and Defendant Evolve
Ag, LLC has its principal place of business pursuant to Indiana Trial Rule
75(A)(1)[,] (4)." Appellant's App. Vol. II p. 11. Keystone now brings this
interlocutory appeal as of right. *See* Ind. Appellate Rule 14(A)(8) (providing for
interlocutory appeals as of right from orders "[t]ransferring or refusing to
transfer a case under Trial Rule 75").

## Discussion and Decision

### A. Standard of Review

Keystone argues that the trial court erred in granting Defendant's motion to
transfer venue to Fountain County. On appeal from a trial court's ruling on a
motion to transfer venue, we review factual findings for clear error and review
conclusions of law de novo. *Scribbles, LLC v. Wedgewood ex rel. Wedgewood*, 101
N.E.3d 844, 846 (Ind. Ct. App. 2018), *trans. denied*. If the trial court's findings
are made from a "paper record," however, we review those findings de novo.
*Id*.

### B. Indiana Trial Rule 75(A).

Indiana Trial Rule 75(A) governs venue and provides in part:

> Any case may be venued, commenced and decided in any court
> in any county, except, that upon the filing of a pleading or a

motion to dismiss allowed by Rule 12(B)(3), the court, from allegations of the complaint or after hearing evidence thereon or considering affidavits or documentary evidence filed with the motion or in opposition to it, shall order the case transferred to a county or court selected by the party first properly filing such motion or pleading if the court determines that the county or court where the action was filed does not meet preferred venue requirements or is not authorized to decide the case and that the court or county selected has preferred venue and is authorized to decide the case.

[10] "Our Supreme Court has explained that '[g]enerally, any case may be venued in any court in the state, subject to the right of an objecting party to request that the case be transferred to a *preferred venue* listed in Rule 75(A).'" *Freeman v. Timberland Home Ctr., Inc.*, 148 N.E.3d 321, 325 (Ind. Ct. App. 2020) (emphasis added) (quoting *Randolph Cty. v. Chamness*, 879 N.E.2d 555, 556 (Ind. 2008)). "Trial Rule 75(A) contains ten subsections, each setting forth criteria establishing preferred venue." *Id.* (citing *Chamness*, 879 N.E.2d at 557). These subsections are as follows:

> (1) **the county where the greater percentage of individual defendants** included in the complaint resides, or, if there is no such greater percentage, the place where any individual defendant so named resides; or
>
> (2) the county where the land or some part thereof is located **or the chattels or some part thereof are regularly located or kept**, if the complaint includes a claim for injuries thereto or relating to such land or such chattels, including without limitation claims for recovery of possession or for injuries, to establish use or control, to quiet title or determine any interest, to avoid or set

aside conveyances, to foreclose liens, to partition and to assert any matters for which in rem relief is or would be proper; or

(3) the county where the accident or collision occurred, if the complaint includes a claim for injuries relating to the operation of a motor vehicle or a vehicle on railroad, street or interurban tracks; or

(4) **the county where either the principal office of a defendant organization is located** or the office or agency of a defendant organization or individual to which the claim relates or out of which the claim arose is located, if one or more such organizations or individuals are included as defendants in the complaint; or

(5) the county where either one or more individual plaintiffs reside, the principal office of a governmental organization is located, or the office of a governmental organization to which the claim relates or out of which the claim arose is located, if one or more governmental organizations are included as defendants in the complaint; or

(6) the county or court fixed by written stipulations signed by all the parties named in the complaint or their attorneys and filed with the court before ruling on the motion to dismiss; or

(7) the county where the individual is held in custody or is restrained, if the complaint seeks relief with respect to such individual's custody or restraint upon his freedom; or

(8) the county where a claim in the plaintiff's complaint may be commenced under any statute recognizing or creating a special or general remedy or proceeding; or

(9) the county where all or some of the property is located or can be found if the case seeks only judgment in rem against the property of a defendant being served by publication; or

(10) **the county where either one or more individual plaintiffs reside**, the principal office of any plaintiff organization or governmental organization is located, or the office of any such plaintiff organization or governmental organization to which the claim relates or out of which the claim arose is located, **if the case is not subject to the requirements of subsections (1) through (9) of this subdivision** or if all the defendants are nonresident individuals or nonresident organizations without a principal office in the state.

> The pleading or motion permitted by this rule must be filed within the time prescribed for the party making it by Rules 6 and 12 and any other applicable provision of these rules.

T.R. 75(A) (emphases added).

[11] "Based on these criteria, there can be, and often are, multiple preferred venues in a given case." *Freeman*, 148 N.E.3d at 325 (citing *Chamness*, 879 N.E.2d at 557). "The preferred venue status of a county is determined when an action is commenced by the filing of a complaint." *Id.* at 325-26 (citing *Scribbles, LLC v. Wedgewood ex rel. Wedgewood*, 101 N.E.3d 844, 848 (Ind. Ct. App. 2018)). Trial Rule 75(A) does not, however, give priority to any particular preferred venue. *Id.* (citing *Belcher v. Kroczek*, 13 N.E.3d 448, 451 (Ind. Ct. App. 2014)).[1] "If the county where the complaint was filed is a preferred venue, transfer to another

---

[1] In *R&D Transport., Inc. v. A.H.*, 859 N.E.2d 332, 335-36 (Ind. 2006), our Supreme Court held that, when chattels are damaged in a motor vehicle accident, the general venue provision for injury to chattels in Trial Rule 75(A)(2) is "subsumed by" the specific motor vehicle accident venue provision in Trial Rule 75(A)(3). *Id.* at 337. Because this case does not involve chattels incidentally damaged in a motor vehicle accident, this rule does not apply. *See Surfware, Inc. v. Allied Specialty Precision, Inc.*, 876 N.E.2d 1156, 1160 (Ind. Ct. App. 2007) (holding that the motor vehicle accident rule from *R&D Transport* was inapplicable because the case did not involve a motor vehicle accident).

county based on venue is improper." *Id*. at 326 (citing *Chamness*, 879 N.E.2d at 557).

## B. Enterprise goodwill is not a chattel for purposes of venue.

[12] Here, the trial court determined that preferred venue lay in Fountain County because that is where Frasch resides and where Evolve has its principal place of business. *See* T.R. 75(A)(1), (4). Keystone does not dispute this. Instead, Keystone argues that Marion County, where it initially filed the suit, is also a preferred venue under Trial Rule 75(A)(2) because the core of its complaint alleges injuries to its chattels—its enterprise goodwill—and that venue could, therefore, not be transferred to another county of preferred venue. *See Freeman*, 148 N.E.3d at 325 (holding that if a complaint is filed in a county of preferred venue, transfer to another county is improper even if that county is also a preferred venue) (citing *Chamness*, 879 N.E.2d at 557). Keystone claims that Marion County is a preferred venue.

[13] Trial Rule 75(A)(2) provides that preferred venue lies in "the county where the land or some part thereof is located **or the chattels or some part thereof are regularly located or kept, if such complaint includes a claim for injuries thereto or relating to such land or such chattels**." (emphasis added). The term "chattel" has been defined as "[m]ovable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property." Chattel, BLACK'S LAW DICTIONARY (12th ed. 2024); accord *Belcher*, 13 N.E.3d at 452 (quoting *R&D Transp., Inc. v. A.H.*, 859 N.E.2d 332, 333 n.1 (Ind. 2006)) (both citing BLACK'S LAW DICTIONARY 251 (8th ed.

2004).  Merriam-Webster's Dictionary similarly defines chattel as "an item of tangible movable or immovable property except real estate and things (such as buildings) connected with real property."  Chattel, Merriam-Webster, https://www.merriam-webster.com/dictionary/chattel [https://perma.cc/9SC4-CXME](last visited Dec. 18, 2025).  "Chattel," thus, refers generally to tangible personal property—movable goods that can be physically possessed and transferred.

[14] Still, the term does appear to include some intangible interests; "personal chattel" has been defined to include "[a] tangible good or an intangible right (such as a patent)."  Chattel, BLACK'S LAW DICTIONARY (12th ed. 2024); *accord Belcher*, 13 N.E.3d at 452 (quoting BLACK'S LAW DICTIONARY 251 (8th ed. 2004)).  We have noted that Trial Rule 75(A)(2) does not distinguish between tangible and intangible chattels.  *Belcher*, 13 N.E.3d at 452 (citing *Phillips v. Scalf*, 778 N.E.2d 480, 483 (Ind. Ct. App. 2002)).

[15] We have also held that some intangible assets may constitute "chattels" for purposes of Trial Rule 75(A)(2).  In *Phillips v. Scalf*, 778 N.E.2d 480, 485 (Ind. Ct. App. 2002), this Court held that a right of publicity qualified as chattel under Trial Rule 75(A)(2).  But the right of publicity involved in *Phillips* was an intangible asset that shared some essential characteristics of a traditional, tangible chattel, such as being definitely identified, exclusively possessed, and transferred as a discrete asset.

[16]   The alleged chattel at issue here—Keystone's intangible asset of enterprise goodwill—lacks these characteristics. Enterprise goodwill is not a separable asset that exists independently of the business itself; instead, it represents the value attributable to reputation, customer relationships, and market position. *See* 38A C.J.S. Goodwill § 1 (2025) (defining goodwill as "the value of an enterprise over and above the value of its net tangible assets, a value that may derive from the allegiance of customers, prolonged favorable relations with a source of financing, and the like"). Thus, unlike intangible assets such as patents, copyrights, or rights to publicity, enterprise goodwill cannot easily be transferred in isolation; it moves only when the business itself or substantial business assets change hands. And the transferability of enterprise goodwill can be uncertain—its value in the hands of a new owner depends on whether customers continue their patronage, the business's reputation remains intact, and established relationships survive the change in ownership.

[17]   We acknowledge that, in *Belcher*, a panel of this Court stated that "[g]oodwill may qualify as chattel." 13 N.E.3d at 452. The *Belcher* Court noted that there are two types of goodwill—enterprise goodwill and personal goodwill. *Id*. "Enterprise goodwill is a business asset that is 'generally transferrable to others and has a value to others.'" *Id*. (quoting *Yoon v. Yoon*, 711 N.E.2d 1265, 1269 (Ind. 1999)).[2] But the *Belcher* Court's discussion of enterprise goodwill was not

---

[2] "In contrast, the goodwill that depends on the continued presence of a particular individual is a personal asset, and any value that attaches to a business as a result of this 'personal goodwill' represents nothing more than the future earning capacity of the individual and is not divisible." *Belcher*, 13 N.E.3d at 452 (quoting *Yoon*, 711 N.E.2d at 1269).

necessary to its holding, as the Court ultimately held that the plaintiff "d[id] not allege an injury to enterprise goodwill . . . ." *Id.* Thus, *Belcher*'s discussion of enterprise goodwill was *dicta*.[3]

[18] We also acknowledge that, in *Yoon*, 711 N.E.2d at 1268, our Supreme Court held that enterprise goodwill "is an asset of the business and accordingly is property that is divisible in a dissolution to the extent that it inheres in the business . . . ." But the issue in *Yoon* was whether enterprise goodwill was a marital asset, and our Supreme Court held that it was. *Id*. In so doing, the Court noted that, although enterprise goodwill is "in general transferrable to others and has a value to others," "[i]t is not necessarily marketable in the sense that there is a ready and easily priced market for it[.]" *Id*. at 1269. Thus, although *Yoon* recognized that enterprise goodwill can be a marital asset, it did not hold that enterprise goodwill was a chattel for venue purposes.

[19] Keystone notes that businesses often value and sell goodwill in commercial transactions. Be that as it may, the ability to assign a monetary value to something in the context of a business sale does not necessarily mean that it is a chattel for venue purposes. When a business is sold, its goodwill might be transferred as part of an all-inclusive transaction involving tangible assets, contracts, customer lists, etc. But enterprise goodwill is not a discrete,

---

[3] Even if *Belcher*'s statements regarding enterprise goodwill were not *dicta*, we are not convinced that enterprise goodwill is a chattel for purposes of venue. *Belcher* noted that enterprise goodwill may be a business asset that is generally transferable to others. *Id*. at 452-53. This might be true when valuing a business or determining the value of marital assets, it does not necessarily mean that enterprise goodwill constitutes a chattel for purposes of venue under Trial Rule 75(A)(2).

identifiable asset that can be separated, possessed, and transferred independently like other intangible assets such as a patent, trademark, or copyright.

[20] Accordingly, we conclude that enterprise goodwill is not a chattel for purposes of venue under Trial Rule 75(A)(2). This means that Marion County is not a county of preferred venue, and the trial court properly transferred venue to Fountain County, which is a county of preferred venue.

## Conclusion

[21] Although enterprise goodwill can be an intangible asset for other purposes, it is not a chattel for venue purposes. Accordingly, the trial court properly determined that Marion County is not a preferred venue and correctly transferred this case to Fountain County, which is a county of preferred venue. We, therefore, affirm the trial court's order transferring venue.

[22] Affirmed.


Bailey, J., and Kenworthy, J., concur.


ATTORNEYS FOR APPELLANT

Melissa A. Macchia
Tracy N. Betz
Donald E. Morgan
Jeffrey W. Parker
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Michael D. Dean
Jerome L. Withered
Kyle J. Epperson
Withered Burns, LLP
Lafayette, Indiana